IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

ANTWAN MYLES,

                 Petitioner,              Civil Action No.
                                        9:17-CV-0862 (TJM/DEP)

     v.

THOMAS GRIFFIN,

                 Respondent.

_____

APPEARANCES:                 OF COUNSEL:

FOR PETITIONER:

ANTWAN MYLES, *Pro se*
10-B-1352
Elmira Correctional Facility
P.O. Box 500
Elmira, NY 14902

FOR RESPONDENT:

HON. BARBARA UNDERWOOD      MATTHEW B. KELLER, ESQ.
New York State Attorney General    Assistant Attorney General
120 Broadway
New York, NY 10271

DAVID E. PEEBLES
CHIEF U.S. MAGISTRATE JUDGE

## REPORT AND RECOMMENDATION

     *Pro se* petitioner Antwan Myles, a New York State prison inmate as

a result of a 2010 conviction for murder and attempted murder, has

commenced this proceeding pursuant to 28 U.S.C. § 2254, seeking habeas relief from this court. In his petition, Myles argues that during the course of proceedings leading up to his guilty plea he received ineffective assistance from his trial counsel, and that his appellate attorney provided him with ineffective representation by failing to raise the issue of ineffective assistance of trial counsel on appeal.

In response to the instant petition, respondent argues that Myles's claims are untimely, and therefore procedurally barred, and that in any event his petition lacks merit. For the reasons set forth below I recommend a finding that the petition, as amended, was untimely filed, and that it therefore should be dismissed on this procedural ground without reaching the merits.

I.   <u>BACKGROUND</u>

Petitioner was convicted on April 27, 2010, of second degree murder and attempted murder in the second degree in New York State Supreme Court, Onondaga County. Dkt. No. 16-1 at 18; Dkt. No. 7 at 1. That conviction was based upon a guilty plea entered by the petitioner on April 6, 2010. Dkt. No. 16-1 at 21. The charges against the petitioner relate to an August 15, 2009 incident in which he attacked and killed Tamara Bass while riding in a vehicle driven by Bass, and additionally stabbed Bass's

sister, Talaka Black, with a kitchen knife. Dkt. No. 16-1 at 45-46, 132-33.

Petitioner was apprehended shortly after the incident and, after waiving his

*Miranda*[1] rights, admitted that he had killed Bass over a $70 debt. Dkt. No.

16-1 at 48-49. Following the entry of his plea, petitioner was sentenced on

April 27, 2010 to serve consecutive prison terms of twenty years to life on

the murder conviction, and eight years for attempted murder. Dkt. No. 16-2

at 169.

During the proceedings in the trial court, petitioner was represented

by Attorney Michael Spano, Esq. With the assistance of new counsel,

Christine M. Cook, Esq., petitioner appealed his conviction to the New

York State Supreme Court Appellate Division, Fourth Department, arguing

that the sentence imposed by the trial court was excessive. Dkt. No. 16-1

at 1-13. On March 21, 2014, a five judge panel of the Fourth Department

unanimously affirmed petitioner's conviction without opinion. *See People v.*

*Myles*, 115 A.D.3d 1232 (4th Dep't 2014) (mem.). Leave to appeal was

subsequently denied by the New York State Court of Appeals on July 7,

2014. *See People v. Myles*, 23 N.Y.3d 1040 (2014) (table).

Proceeding *pro se* and on July 31, 2015, petitioner moved to set

aside his conviction pursuant to N.Y. Criminal Procedure Law §§ 440.10,

---

[1]     *Miranda v. Arizona*, 584 U.S. 436 (1966).

440.20. Dkt. No. 16-1 at 110-135. In that motion, Myles argued that he had received ineffective assistance of counsel when his lawyer permitted him to enter a guilty plea on an insufficient allocution, and that the imposition of consecutive sentences was improper under both state law and the Fifth Amendment's prohibition against double jeopardy. *Id.* Petitioner's Article 440 motion was denied by the trial judge, Acting Supreme Court Justice John Brunetti, on July 18, 2016. Dkt. No. 16-1 at 143-47. Leave to appeal that determination was subsequently denied by an Associate Justice of the Fourth Department on November 17, 2016. Dkt. No. 16-1 at 156. Following that denial, petitioner wrote to the New York State Court of Appeals on December 7, 2016, requesting leave to appeal the Fourth Department's denial to that court. Dkt. No. 16-1 at 157-58. Petitioner's request for leave to appeal was dismissed on February 16, 2017, based upon a finding that "the order sought to be appealed from is not appealable under CPL 450.90(1)." Dkt. No. 16-1 at 159.

Petitioner's efforts to collaterally attack his conviction persisted with the filing, on or about February 8, 2017, of an application for a writ of error *coram nobis*. Dkt. No. 16-1 at 160-69. In that application, petitioner argued that his appellate counsel failed to effectively represent him by not raising an ineffective assistance of trial counsel claim on appeal. *Id.* That

4

application was denied on April 28, 2017. Dkt. No. 16-1 at 178. Petitioner's

request for leave to appeal that determination was denied on July 24,

2017. Dkt. No. 16-1 at 183.

II.   PROCEDURAL HISTORY

Petitioner commenced this proceeding by the filing of a petition on

August 2, 2017, and later submitted an amended petition on November

16, 2017. Dkt. Nos. 1, 7. In his petition, as amended, Myles presents two

grounds for his request for habeas relief, arguing that (1) his trial counsel

was ineffective for failing to object to errors during the plea proceedings,

and specifically the fact that the plea was accepted without an adequate

factual recitation to support the conviction of attempted murder; and (2)

petitioner's appellate counsel was ineffective for failing to raise the

ineffective assistance of trial counsel claim in his direct appeal. *Id.*

Respondent, represented by the Office of the New York State Attorney

General, has opposed the petition, arguing both that it is untimely and that

it is insufficient on the merits. Dkt. Nos. 14, 15. Accompanying

respondent's opposition submission was a compilation of the relevant

state court records, helpfully organized and indexed for the benefit of the

court and the *pro se* petitioner. Myles's petition is now ripe for

determination, and has been referred to me for the issuance of a report

and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern

District of New York 72.3(c). *See* Fed. R. Civ. P. 72(b).

III.   DISCUSSION

As an initial, threshold matter, respondent argues that the petition in

this matter is untimely. Although petitioner did not reply to respondent's

answering papers, he anticipated the statute of limitations claim, arguing in

his amended petition that when the time during which his collateral state

court challenges were pending is excluded, his petition was filed within the

statutory one-year period.

A.   Statute of Limitations Under the AEDPA

In 1996, Congress enacted the Antiterrorism and Effective Death

Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214

(1996), bringing about sweeping reform of the prison inmate litigation

landscape. The measures introduced by the AEDPA were significant new

restrictions on the power of the federal courts to grant habeas relief to

state court prisoners under 28 U.S.C. § 2254. Among the restrictions

implemented was creation of a one-year limitation period for filing such

habeas petitions. 28 U.S.C. § 2244(d)(1); *Cook v. New York State Div. of*

*Parole*, 321 F.3d 274, 279-80 (2d Cir. 2003). The AEDPA statute of

limitations "reduces the potential for delay on the road to finality by

restricting the time that a prospective federal habeas petitioner has in

which to seek federal habeas review." *Duncan v. Walker*, 533 U.S. 167,

179 (2001).

The provision establishing the one-year limitation offers specific

guidance regarding measurement of the prescribed period, providing that:

> The limitation period shall run from the latest of-
>
> **(A)** the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> **(B)** the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> **(C)** the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> **(D)** the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

B.   Analysis

With one exception, the parties are in relative agreement concerning the statute of limitations calculation in this case. They agree that petitioner's conviction became final on October 5, 2014, as a result of his failure to file a petition for a writ of *certiorari* to the United States Supreme Court. Dkt. No. 7 at 14; Dkt. No. 14 at 11. From that point until July 31, 2015, when petitioner filed his Article 440 motion, two hundred ninety-six days of the one-year limitation period had run. Dkt. No. 16-1 at 110-11. The statute of limitations was tolled during the pendency of that motion until November 17, 2016, when the Fourth Department denied leave to appeal to the Court of Appeals. Dkt. No. 16-1 at 156. At that point, sixty-nine days remained on the limitation period.

The parties' positions diverge over whether the tolling resulting from the filing of the Article 440 motion continued until February 16, 2017, when the Court of Appeals dismissed petitioner's request to appeal to that court, as the petitioner now contends. Dkt. No. 16-1 at 159. The issue of whether the tolling resulting from the filing of the Article 440 motion should extend to that point is pivotal to the timeliness issue, since if the clock resumed ticking following the Fourth Department's denial of leave to appeal on November 17, 2016, the limitation period expired on January 26, 2017, prior to the filing of petitioner's *coram nobis* petition on or about February

8

8, 2017. Dkt. No. 16-1 at 160-61. If not, on the other hand, that time is properly excluded, then this action, which was commenced on or about August 2, 2017, *see* Dkt. No. 1 at 15, is timely when the period during which the application for a writ of error *coram nobis* was pending is also excluded.

Section 2244(d)(2) provides for tolling while "a *properly filed* application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2) (emphasis supplied). The tolling provision includes the time during which an appeal from the denial of an application for collateral review is pending. *Bidinost v. Colvin*, No. 9:14-CV-1080, 2015 WL 5838472, at *3 (N.D.N.Y. Oct. 7, 2015) (Hurd, J.).[2]

Appeals to the New York Court of Appeals in cases of this nature are governed by N.Y. Criminal Procedure Law § 450.90(1).[3] It is well-

---

[2]    Copies of all unreported decisions cited in this document have been appended for the convenience of the *pro se* plaintiff.

[3]    That section provides as follows:

> Provided that a certificate granting leave to appeal is issued pursuant to section 460.20, an appeal may, except as provided in subdivision two, be taken to the court of appeals by either the defendant or the people from any adverse or partially adverse order of an intermediate appellate court entered upon an appeal taken to such intermediate appellate court pursuant to section 450.10, 450.15, or 450.20, or from an order granting or denying a motion to set

established that that section does not permit a criminal defendant to request leave from the New York Court of Appeals following the denial by the Appellate Division of such a request. *People v. Johnson*, 98 N.Y.2d 687 (2002); *People v. Grossman*, 87 N.Y.2d 1003 (1996); *see also Hutzenlaub v. Portuondo*, 232 F. Supp. 2d 40, 43 (E.D.N.Y. 2002). Accordingly petitioner's application to the Court of Appeals was not "properly filed," and the time during which that request was pending did not result in further tolling under section 2244(d). *Bidinost*, 2015 WL 5838472, at *3, n.4; *accord Bennett v. Artuz*, 199 F.3d 116, 120 (2d Cir. 1999), *aff'd*, 531 U.S. 2 (2002); *see Brown v. Duncan*, No. 9:00-CV-0242, 2003 WL 21294476, at *4 (N.D.N.Y. Jun. 4, 2003) (Sharpe, M.J.). The

---

aside an order of an intermediate appellate court on the ground of ineffective assistance or wrongful deprivation of appellate counsel, or by either the defendant or the people from any adverse or partially adverse order of an intermediate appellate court entered upon an appeal taken to such intermediate appellate court from an order entered pursuant to section 440.46 of this chapter. An order of an intermediate appellate court is adverse to the party who was the appellant in such court when it affirms the judgment, sentence or order appealed from, and is adverse to the party who was the respondent in such court when it reverses the judgment, sentence or order appealed from. An appellate court order which modifies a judgment or order appealed from is partially adverse to each party.

N.Y. Crim. Proc. Law § 450.90(1).

petition in this matter is therefore untimely and subject to dismissal, absent a basis to overlook the statutory one-year statute of limitations.

C.   Equitable Tolling

One of the recognized exceptions warranting a court's consideration of the merits of an otherwise untimely petition is equitable tolling. "In 'rare and exceptional circumstances' a petitioner may invoke the court's power to equitably toll the limitations period" imposed under the AEDPA. *Doe v. Menefee,* 391 F.3d 147, 159 (2d Cir. 2004), *cert. denied*, 546 U.S. 961, 126 S. Ct. 489 (2005) (citing *Smith,* 208 F.3d at 17; *Corrigan v. Barbery*, 271 F. Supp.2d 325, 330 (W.D.N.Y. 2005) (citing *Smith*). Under this narrow exception, the AEDPA statute of limitations may properly be equitably tolled where a petitioner has pursued his or her rights diligently, but has been prevented by "extraordinary circumstances" from filing a petition. *Pace v. DiGuglielmo*, 544 U.S. 408, 418, 125 S. Ct. 1807, 1814 (2005) (citation omitted); *see also Menefee*, 391 F.3d at 154. "To merit application of equitable tolling, the petitioner must demonstrate that he [or she] acted with reasonable diligence during the period he [or she] wishes to have tolled, but that despite his [or her] efforts, extraordinary circumstances beyond his [or her] control prevented successful filing during that time." *Smaldone v. Senkowski*, 273 F.3d 133, 138 (2d Cir.

2001) (internal quotation and citation omitted), *cert. denied*, 535 U.S. 1017, 122 S. Ct. 1606 (2002); *see also Warren*, 219 F.3d at 113 (citing *Smith*); *West v. Hamill*, No. 04-CV-2393, 2005 WL 1861735, at *1 (E.D.N.Y. Aug. 1, 2005) (citing *Smith*).

The standard for finding equitable tolling is exacting. The fact that a petitioner is proceeding *pro se* and faces the hurdles associated with that status alone does not suffice to merit equitable tolling. *Bidinost*, 2015 WL 5838472, at *4.

In this instance petitioner has not involved equitable tolling, and has alleged no facts to carry his heavy burden of establishing entitlement to such tolling. Indeed, it appears that the sole basis for the untimeliness of his petition is Myles' mistaken belief that he was entitled to request leave from the Court of Appeals for review of the Appellate Division's denial of request for leave to appeal the Article 440 denial. The result of such a mere mistake does not provide a basis for equitable tolling. [CITATION].

D.   Actual Innocence

Another potentially available exception to the one-year statute of limitations involves claims of actual innocence. The Second Circuit has concluded actual innocence "warrants an equitable exception to AEDPA's limitation period, allowing the petitioner to have his otherwise time-barred

claims heard by a federal court." *Rivas v. Fischer*, 687 F.3d 514 (2d Cir. 2012). However, a claim of actual innocence must be both credible and compelling. *Id.* at 541. A claim is credible if it is "supported by 'new reliable evidence . . . that was not presented at trial.'" *Id.* (quoting *Schlup v. Delo*, 513 U.S. 298, 324 (1995)). A claim is also compelling if the petitioner can demonstrate that, more likely than not, any reasonable juror would have reasonable doubt as to the petitioner's guilt in light of the new evidence. *Rivas*, 687 F.3d at 541; *accord House v. Bell*, 547 U.S. 518, 538 (2006).

In this instance, the petition does not contain any claims of actual innocence, and petitioner has not argued that he is actually innocent of the crimes of conviction. Any such claim, moreover, would be flatly contradicted by petitioner's plea allocution on April 6, 2010. Dkt. No. 16-1 at 129-35. In entering his plea, petitioner admitted stabbing Tamara Bass Cheeks in the neck with intent to cause her death. *Id.* 132. Similarly, he acknowledged attempting to cause the death of Talaka Black. *Id.* at 132-33. Under these circumstances, petitioner has failed to carry his heavy burden of demonstrating his actual innocence as a basis to overlook the untimeliness of his petition.

     E.    <u>Certificate of Appealabiilty</u>

To appeal a final order denying a request by a state prisoner for habeas relief, a petitioner must obtain from the court a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(A); *see also* Fed. R. App. P. 22(b)(1) ("[T]he applicant cannot take an appeal unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)."). In the absence of a COA, a federal court of appeals lacks jurisdiction to entertain an appeal from the denial of a habeas petition. *Hoffler v. Bezio*, 726 F.3d 144, 152 (2d Cir. 2013).

A COA may issue only "if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *Hoffler*, 726 F.3d at 154. A petitioner may demonstrate a "substantial showing" if "the issues are debatable among jurists of reason; . . . a court could resolve the issues in a different manner; or . . . the questions are adequate to deserve encouragement to proceed further." *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983) (quotation marks omitted). A similar standard applies when a COA is sought to challenge the denial of a habeas petition on a procedural basis. *See Slack v. McDaniel*, 529 U.S. 473, 478 (2000) ("[A] COA should issue . . . if the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right, and that jurists of reason

would find it debatable whether the district court was correct in its procedural ruling.").

In this instance, I find that jurists of reason would not find it debatable as to whether the petition in this matter is untimely. Accordingly, I recommend against the issuance of a COA.

IV.   SUMMARY AND RECOMMENDATION

The petition in this matter was not filed within the one-year statute of limitations set forth in 28 U.S.C. § 2244(d), even when the times during which properly-filed state court proceedings challenging his conviction were pending are excluded from the limitation calculation. In addition, the petitioner has provided no basis to conclude that petitioner should have the benefit of equitable tolling or that a finding of actual innocence should excuse the petition's untimeliness. Accordingly, it is hereby respectfully,

RECOMMENDED that the amended petition in this matter (Dkt. No. 7) be DENIED and DISMISSED in all respects, and that a certificate of applicability not be issued.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this

report.[4] FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE

APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d),

72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this

report and recommendation upon the parties in accordance with this

court's local rules.

David E. Peebles
U.S. Magistrate Judge


Dated:        October 30, 2018
              Syracuse, NY

---

[4]      If you are proceeding *pro se* and are served with this report and
recommendation by mail, three additional days will be added to the fourteen-day
period, meaning that you have seventeen days from the date the report and
recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If
the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then
the deadline is extended until the end of the next day that is not a Saturday, Sunday, or
legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

2015 WL 5838472
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Aurelio R. BIDINOST, Petitioner,
v.
John COLVIN, Respondent.

No. 9:14–CV–1080 (DNH).
|
Signed Oct. 7, 2015.

**Attorneys and Law Firms**

Aurelio R. Bidinost, Marcy, NY, pro se.

Hon. Eric T. Schneiderman, New York State Attorney General, Alyson J. Gill, Esq., Ass't Attorney General, of Counsel, New York, NY, for Respondent.

**DECISION and ORDER**

DAVID N. HURD, District Judge.

**I. *INTRODUCTION***

 *1 Petitioner Aurelio R. Bidinost ("Bidinost" or "petitioner") has filed an amended petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, a supporting affirmation, and several exhibits. Dkt. No. 16, Amended Petition ("Am.Pet."). Petitioner argues that the trial court improperly relied upon a 2000 conviction to sentence him as a "violent predicate felony offender" without proper notice or a hearing. Am. Pet. at 4–5.

Respondent John Colvin ("respondent") filed an answer, memorandum of law, and state court records. Dkt. No. 22, Respondent's Memorandum of Law in Opposition to the Petition for a Writ of Habeas Corpus ("R.Mem."); Dkt. No. 23, Answer; Dkt. No. 24, State Court Records ("SR").

Bidinost filed a reply and accompanying memorandum of law. Dkt. No. 32, Affirmation in Opposition to Respondent's Answer & Memorandum of Law ("Reply"); Memorandum of Law in Opposition to Respondent's Answer ("Mem."). [1]

For the reasons that follow, the petition is denied and dismissed.

**II. *RELEVANT BACKGROUND***

On July 13, 2012, Bidinost pleaded guilty in the Saratoga County Court to second degree assault (N.Y. Penal Law § 120.05(4)) and second degree vehicular assault (N.Y. Penal Law § 120.03(1)). Dkt. No. 24 at SR 2, Plea and Sentencing Transcript, Nov. 5, 2012.

Sentencing was adjourned until October 5, 2012, and on that date the court and the parties "realized that the agreed upon plea and sentence agreement was statutorily unauthorized." Dkt. No. 24 at SR 2. The court had also learned that petitioner "violated the terms of his Parker [2] admonishment by being arrested on a new charge" of reckless endangerment. *Id.*

The parties re-negotiated the plea and sentencing agreement, including a disposition of the new reckless endangerment charge. Dkt. No. 24 at SR 2. Under the new terms, Bidinost would be sentenced to serve one and one-half to three years in prison for vehicular assault and a concurrent term of five years in prison followed by five years post-release supervision for second degree assault. *Id.* at SR 2–3. The prosecutor explained that petitioner executed a new waiver of appeal in anticipation of that agreed upon sentence. *Id.* at SR 2–3. Petitioner also agreed to plead guilty to attempted reckless endangerment (N.Y. Penal Law §§ 110.00/120.25) in exchange for a concurrent sentence of one and one-half to three years. *Id.* at SR3. The prosecutor also filed a Special Information alleging that on June 23, 2000, petitioner was convicted in Schenectady County Court of second degree assault. *Id .* at SR 10.

Bidinost confirmed that he understood the terms of the new plea agreement, waived his right to be prosecuted by indictment on the attempted reckless endangerment charge, and agreed to be prosecuted for that charge by prosecutor information. *Id.* at SR 4–5. Petitioner also waived his rights to a trial, against self-incrimination, and to appeal. *Id.* at SR 6–8. Petitioner confirmed that he had spoken to his attorney, who explained to him what the waiver of appeal meant, and that he understood its consequences. *Id.* at SR 8. Petitioner also told the court he understood he could not be forced to plead guilty, that it was his decision, and he was not under the effects of any

drugs, medication, or illness that would make it difficult to understand the proceedings. *Id.* at SR 8–9.

**\*2** Bidinost then admitted that on September 25, 2012, he attempted, under circumstances evincing a depraved indifference to human life, to recklessly engage in conduct which created a grave risk of death to a police officer. Dkt. No. 24 at SR 10. Petitioner also admitted that he was the same person who was convicted of the June 2000 charge of second degree assault alleged in the Special Information. *Id.* When the court asked counsel if he intended to contest anything in the Special Information, counsel replied, "No, Judge, that's accurate." *Id.* The court then imposed the agreed-upon sentence. *Id.* at SR 13–14.

Bidinost did not appeal. In papers dated March 4, 2013, petitioner m oved to vacate his sentence pursuant to New York Criminal Procedure Law ("CPL") § 440.20. Dkt. No. 24 at SR 16–17, Notice of Motion to Vacate Judgment; SR 18–20, Affidavit in Support of Motion to Set Aside Sentence. Petitioner argued that: (1) the trial court failed to comply with the provisions of CPL § 400.21, which required the court to provide him with an opportunity to contest the 2000 assault conviction; and (2) he was improperly sentenced as a second violent felony offender because the 2000 assault conviction occurred more than ten years prior to the current offenses and should not have been used to enhance his sentence. *Id.* at SR 18–20. The People opposed the motion. *Id.* at SR 23–27, Affirmation in Opposition to CPL § 440.20.

On June 4, 2013, the trial court denied the motion. Dkt. No. 24 at SR 28–29, Decision and Order, Scarano, J. The court explained that Bidinost was properly sentenced as a second violent felony offender because he was "incarcerated on numerous occasions between the commission of his previous violent felony in 2000 and his present violent felony," and those periods of time "are excluded from calculation of the relevant 10 year period." *Id.* at SR 29.

On August 15, 2013, the Appellate Division, Third Department, denied leave to appeal. *Id.* at SR 61, Order, Rose, J. Although it is not entirely clear based on the record, Bidinost may have requested leave to appeal a second time, by letter received by the Appellate Division on June 26, 2013. *Id.* at SR 63. That application was also denied on October 2, 2013. *Id.* at SR 62, Order, Rose, J. Petitioner's application for leave to appeal further to the

New York Court of Appeals was dismissed on December 5, 2013. *People v. Bidinost,* 22 N.Y.3d 1038 (2013).

This action followed.

### III. *DISCUSSION*

#### A. *Timeliness*

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") established a one-year statute of limitations for prisoners to seek federal review of their state court criminal convictions. 28 U.S.C. § 2244(d)(1). The one-year period generally begins to run from the date on which the state criminal conviction became final by the conclusion of direct review or by the expiration of the time to seek direct review. 28 U.S.C. § 2244(d)(1)(A); [3] *Gonzalez v. Thaler,* —— U.S. ——, 132 S.Ct. 641, 652–53 & n. 9 (2012).

**\*3** For purposes of section 2244(d)(1)(A), a state conviction becomes "final" when the United States Supreme Court denies an application for a writ of certiorari or when the time to seek certiorari has expired, which is ninety days after the date on which the highest court in the state has completed direct review of the case. *Thaler,* 132 S.Ct. at 653; *Saunders v. Senkowski,* 587 F.3d 543, 548–49 (2d Cir.2009).

In this case, Bidinost was sentenced on November 5, 2012 and did not appeal. His conviction therefore became "final" for purposes of the AEDPA on December 5, 2012, when the thirty days in which he could have sought appellate review of his conviction in state court expired. *See Bethea v. Girdich,* 293 F.3d 577, 578 (2d Cir.2002) (per curiam) (the one-year statute of limitations began to run when the petitioner's time for filing a notice of appeal from the judgment of conviction expired); *Vaughan v. Lape,* No. 9:05–CV–1323, 2007 WL 2042471, \*4 (N.D.N.Y. July 12, 2007) ("In New York, a defendant has thirty days after the 'imposition of the sentence' to notify the court that he will appeal. N.Y. C.P.L. § 460.10(1)(a)."). Therefore, petitioner had until December 5, 2013 to file a timely federal habeas petition. Accordingly, his petition, signed on September 1, 2014, is untimely.

#### 1. *Statutory Tolling*

However, the one-year limitation period under AEDPA is tolled while "a properly filed application for State

post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2); *Saunders,* 587 F.3d at 548. The tolling provision "excludes time during which properly filed state relief applications are pending, but does not reset the date from which the one-year statute of limitations begins to run." *Smith v. McGinnis,* 208 F.3d 13, 17 (2d Cir.2000) (per curiam). The tolling provision excludes from the limitations period only the time that the state relief application remained undecided, including the time during which an appeal from the denial of the application was taken. *Saunders,* 587 F.3d at 548; *Smith,* 208 F.2d at 16.

Here, Bidinost filed his CPL § 440.20 motion to set aside his sentence on March 4, 2013. Dkt. No. 24 at SR 16–20. At that point, 89 days of the one-year statute of limitations expired, leaving 276 days remaining. The statute of limitations was tolled from March 4, 2013 until October 2, 2013, when the Appellate Division denied leave to appeal. Dkt. No. 24 at SR 16–20; SR 62;[4] *Smith,* 208 F.3d at 16. The limitations period began to run again on October 3, 2013, and expired 276 days later, on July 7, 2014.[5] However, as noted above, petitioner signed his petition on September 1, 2014. Accordingly, petitioner's filing is untimely even with the benefit of tolling.

### 2. *Equitable tolling*

Alternatively, AEDPA's one-year statute of limitations period "is subject to equitable tolling in appropriate cases." *Holland v. Florida,* 560 U.S. 631, 645 (2010). To warrant equitable tolling, a petitioner must show " '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland,* 560 U.S. at 649 (quoting *Pace v. DiGuglielmo,* 544 U.S. 408, 418 (2005)); *Diaz v. Kelly,* 515 F.3d 149, 153 (2d Cir.2008).

**\*4** The standard for evaluating a claim of extraordinary circumstances is one that focuses not on "the uniqueness of a party's circumstances," but instead on "the severity of the obstacle impeding compliance with a limitations period." *Harper v. Ercole,* 648 F.3d 132, 137 (2d Cir.2011); *see Rivas v. Fischer,* 687 F.3d 514, 538 (2d Cir.2012) (whether a circumstance is extraordinary depends on "how severe an obstacle it is for the petitioner endeavoring to comply with the AEDPA's limitations period .") (quoting *Diaz,* 515 F.3d at 154).

A petitioner must show not only that extraordinary circumstances existed, but that those circumstances "caused him to miss the original filing deadline." *Harper,* 648 F.3d at 137. Claims of extraordinary circumstances must be supported with evidence and not merely with conclusory allegations. *Reid v. Atty Gen., State of New York,* No. 9:04–CV–0178 (TJM/RFT), 2008 WL 3049870 at \*6 (N.D.N .Y. Aug. 1, 2008).

Additionally, a petitioner must have acted with "reasonable diligence throughout the period he seeks to toll[.]" *Harper,* 648 F.3d at 138 (quoting *Belot v. Burge,* 490 F.3d 201, 205 (2d Cir.2007)). If a petitioner did not exercise reasonable diligence after the extraordinary circumstance began, "the link of causation between the extraordinary circumstances and the failure to file is broken, and the extraordinary circumstances therefore did not prevent timely filing." *Baldayaque v. United States,* 338 F.3d 145, 150 (2d Cir.2003) (quoting *Hizbullahankhamon v. Walker,* 255 F.3d 65, 75 (2d Cir.2001)); *Mason v. Pool,* 554 F.Supp.2d 391, 397–98 (W.D.N.Y.2008).

Liberally construing his reply and memorandum, Bidinost claims that his petition is untimely because trial counsel was ineffective for not informing him of his right to appeal and for failing to file a direct appeal. Dkt. No. 32, Reply at 3; Mem. at 5–6. But the record reveals that petitioner signed a written waiver of his right to appeal, and petitioner told the trial court that counsel explained the waiver to him and he understood its ramifications. Dkt. No. 24 at SR 8. Even assuming counsel's failure to file a direct appeal constitutes an extraordinary circumstance, petitioner offers no explanation for how counsel's failure to file a direct appeal "caused him to miss the original filing deadline." *Harper,* 648 F.3d at 137.

Bidinost also appears to argue that he was acting pro se, and had to learn "all the different avenues for relief, after painstakingly studying and researching" the law at the law library at his facility. Dkt. No. 32, Mem. at 6. But equitable tolling is not permitted "whenever a petitioner must face the daunting procedural obstacles to obtaining habeas review without the assistance of counsel." *Jenkins v. Greene,* 630 F.3d 298, 305 (2d Cir.2010); *see Smith,* 208 F.3d at 18 (a petitioner's pro se status does not establish sufficient ground for equitable tolling); *Adkins v. Warden,* 585 F.Supp.2d 286, 297 (D.Conn.2008) ("Most courts also

recognize that lack of knowledge and education about the law and one's legal rights is not an extraordinary circumstance because tolling for this common obstacle that most petitioners face would undermine the legislative decision to impose a one-year limitations period."), *aff'd.* 354 F. App'x. 564 (2d Cir.2009), *cert. denied* 562 U.S. 953 (2010); *Ayala v. Miller,* No. 1:03–CV–3289, 2004 WL 2126966 at *2 (E.D.N.Y. Sept. 24, 2004) ("Neither a prisoner's pro se status, nor his lack of expertise, provides a basis for equitable tolling of AEDPA's statute of limitations."). Similarly, the "fact that it took [petitioner] some time to research the law is not an extraordinary circumstance that would justify equitable tolling." *Phillips v. LaValley,* No. 1:10–CV–0997, 2012 WL 443856 at *13 (W.D.N.Y. Feb. 10, 2012) (quoting *Prescod v. Brown,* No. 1:10–CV–2395, 2011 WL 182063 at *5 (S.D.N.Y. Jan. 20, 2011), *adopted* 2011 WL 497855 (S.D.N.Y. Feb. 10, 2011)).

**\*5** In sum, Bidinost has not shown that he experienced extraordinary circumstances, or that those that those circumstances caused him to miss the original filing deadline. *Harper,* 648 F.3d at 136–37. Petitioner also failed to show that he was pursuing his rights diligently during the entire time he seeks to toll. He could have "started his preparation earlier and filed an unpolished petition within the allotted time, rather than wait[ing] to file until after the deadline had expired." *Belot,* 490 F.3d at 207. Accordingly, petitioner is not entitled to equitable tolling. *See Belot,* 490 F.3d at 207–08 (district court did not abuse its discretion when it dismissed a habeas petition as untimely where the petitioner filed a two-day-late petition, and denied equitable tolling of habeas limitations period, on grounds that the petitioner should have begun his preparation earlier and filed an unpolished, but timely, petition, rather than waiting until his law library access was restored following prison lockdown to enable him to file a more polished, but untimely, petition).

### 3. *Actual Innocence*

Finally, courts have also recognized an equitable exception to the one-year statute of limitations under 28 U.S.C. § 2244(d)(1) in cases where a petitioner can prove actual innocence. *McQuiggin v. Perkins,* –– U.S. ––––, 133 S.Ct. 1924, 1928, 1931 (2013); *Rivas,* 687 F.3d at 551–52. The Supreme Court has cautioned, however, that "tenable actual-innocence gateway pleas are rare[.]" *McQuiggin,* 133 S.Ct. at 1928.

To be successful, petitioners asserting innocence as a gateway to federal habeas review when the statute of limitations has expired must defaulted claims must establish that, "in light of new evidence, no juror acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Id.* at 1928 (quoting *Schlup v. Delo,* 513 U.S. 298, 329 (1995)); *see House v. Bell,* 547 U.S. 518, 536–37 (2006) (petitioners "asserting innocence as a gateway to defaulted claims must establish that, in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.' ") (quoting *Schlup,* 513 U.S. at 327).

In other words, the petitioner must support an actual innocence claim "with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Doe v. Menefee,* 391 F.3d 147, 161 (2d Cir.2004) (quoting *Schlup,* 513 U.S. at 324). This standard "is demanding and permits review only in the 'extraordinary' case." *House,* 547 U.S. at 538 (quoting *Schlup,* 513 U.S. at 327) (further citations omitted).

Here, Bidinost makes no claim of actual innocence in his amended petition, reply or accompanying memorandum of law, and has not identified any new, credible evidence of actual innocence. In fact, he does not contest the validity of his convictions at all, focusing instead on the alleged invalidity of the sentence imposed. *See* Am. Pet.; Reply; Mem. Therefore, there is no credible claim of actual innocence which would warrant considering this otherwise time-barred petition. *McQuiggin,* 133 S.Ct. at 1928, 1931.

### IV. *CONCLUSION*

**\*6** Therefore, it is

ORDERED that

1. The amended petition, Dkt. No. 16, is **DISMISSED AS UNTIMELY;** [6]

2. No Certificate of Appealability ("COA") shall issue because Bidinost failed to make a "substantial showing of the denial of a constitutional right" as 28 U.S.C. § 2253(c) (2) requires; [7] and

3. The Clerk of the Court is directed to serve copies of this Decision and Order upon the parties in accordance with the Local Rules.

IT IS SO ORDERED.

**All Citations**

Not Reported in F.Supp.3d, 2015 WL 5838472

Footnotes

1    The cited page numbers for the amended petition, reply, and memorandum of law refer to those generated by the Court's electronic filing system.

2    *People v. Parker,* 57 N.Y.2d 136, 141 (1982) (requiring that defendants must be informed of the right to be present at trial and the consequences of failing to appear).

3    Other dates from which the limitations period may start running are the date on which an unconstitutional, state-created impediment to filing a habeas petition is removed, the date on which the constitutional right on which the petitioner bases his habeas application was initially recognized by the Supreme Court, if the right was newly recognized and made retroactively applicable, or the date on which the factual predicate for the claim or claims presented could have been discovered through the exercise of due diligence (newly discovered evidence). 28 U.S.C. § 2244(d)(1) (B)-(D). None of the bases for a later date upon which the statute of limitations could have begun to run apply in this case.

4    As noted, Bidinost apparently filed an application in the New York Court of Appeals for leave to appeal from the Appellate Division's October 2, 2013 decision. Dkt. No. 24 at SR 62, 63. His application was denied on December 5, 2013. *Bidinost,* 22 N.Y.3d 1039. But the time this application was pending is not tolled because the relief sought is not recognized in New York. CPL § 450.90(1); *see Bennett v. Artuz,* 199 F.3d 116, 120 (2d Cir.1999), *aff'd,* 531 U.S. 2 (2002) ("a state-court petition is 'pending' from the time it is first filed until finally disposed of and further appellate review is unavailable under the particular state's procedures."); *Walker v. Graham,* 955 F.Supp.2d 92, 101–102 (E.D.N.Y.2013) ("the limitation period was not tolled during the pendency of Walker's motion for leave to appeal to the Court of Appeals the Appellate Division's denial of leave to appeal the 440 Motion, because no such appeals are permitted under New York law.").

5    July 6, 2014 was a Sunday. Fed.R.Civ.P. 6(a)(1)(C).

6    Even if the petition were timely, no federal habeas relief would issue. Petitioner's sentencing claims are not cognizable because the sentence imposed was within the range prescribed by state law, and his claim is based purely on state law. Am. Pet. at 4–5; *Lockyer v. Andrade,* 538 U.S. 63, 72–73 (2003); *see Estelle v. McGuire,* 502 U.S. 62, 67–68 (1991) ("It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Saracina v. Artus,* 452 F. App'x. 44, 46 (2d Cir.2010) ("Whether a New York court erred in applying a New York recidivist sentencing enhancement statute is a question of New York State law, not a question of fact. And it is well-established that '[i]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions .' ") (quoting *Estelle,* 502 U.S. at 67–68); Therefore, the sentencing court's decision that petitioner was properly adjudicated as a predicate violent felon was not contrary to, nor an unreasonable application of, clearly established federal law. 28 U.S.C. § 2254(d)(1).

7    *Miller–El v. Cockrell,* 537 U.S. 322, 336 (2003); *see Richardson v. Greene,* 497 F.3d 212, 217 (2d Cir.2007) (holding that, if the court denies a habeas petition on procedural grounds, "the certificate of appealability must show that jurists of reason would find debatable two issues: (1) that the district court was correct in its procedural ruling, and (2) that the applicant has established a valid constitutional violation" (citation omitted)).

---

**End of Document**                                    © 2018 Thomson Reuters. No claim to original U.S. Government Works.

2003 WL 21294476

2003 WL 21294476
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Willie BROWN, Petitioner,
v.
George DUNCAN, Superintendent, Respondent.

No. 9:00CV0242(DNH)(GLS).
|
June 4, 2003.

**Attorneys and Law Firms**

Willie Brown, Great Meadow Correctional Facility,
Comstock, NY, Petitioner, pro se.

Hon. Eliot Spitzer, Attorney General of the State of New
York, The Capitol, Litigation Bureau, Albany, NY, for
the Respondent.

Roger W. Kinsey, Assistant Attorney General, of counsel.

*ORDER AND REPORT–RECOMMENDATION*

SHARPE, Magistrate J.

**\*1** Petitioner, *pro se,* Willie Brown, a New York State
prison inmate as a result of a 1992 Albany County
Supreme Court conviction for rape in the first degree,
sodomy in the first degree, and robbery in the second
degree, has commenced this proceeding seeking federal
habeas relief pursuant to 28 U.S.C. § 2254. Respondent
opposes the petition, arguing both that it is untimely and
that it should be rejected on the merits.

In light of the fact that the petition is barred by the
governing one year statute of limitations applicable to
habeas petitions in light of the Antiterrorism and Effective
Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104–
132, 110 Stat. 1214 (1996), this court recommends that
Brown's petition be denied and dismissed.

I. *Background*
Brown's conviction stems from an incident which occurred
in the early morning hours on December 15, 1990, in
an apartment located in Albany, New York. During the

course of the previous evening, the victim, [1] a student at
the State University of New York at Albany, patronized
some local taverns in the Albany, New York, area and
was accompanied by a male companion. *See* Transcript of
Trial of Willie James Brown and June Christine Benson,
Index No. DA 216–91 ("Trial Tr.") at PP. 546–47. At
some point during that night, the victim left a bar and
attempted to walk to her apartment which was located
on Washington Avenue. Trial Tr. at P. 548. On her way
home, the victim became disoriented and found herself
lost in the Arbor Hill section of Albany, New York. Trial
Tr. at PP. 548–49.

The victim was subsequently approached by an individual
identified by the victim at trial as Willie James Brown.
*See* Trial Tr. at P. 617. He advised the victim that she
was in an unsafe part of the city and should not be
walking alone. Trial Tr. at P. 549. Brown offered to take
her to an apartment where he claimed his wife would
call the woman's friends and ask them to pick her up.
Trial Tr. at PP. 549–50. Benson then asked the victim
for the telephone numbers of her friends, briefly left the
apartment, and soon returned and told the victim that her
friends were on the way. [2] Trial Tr. at PP. 551–52.

After a period of time, the victim became nervous and
expressed her desire to leave. Trial Tr. at P. 553. However,
Benson informed the victim that she wasn't "going
anywhere." Trial Tr. at P. 553. After demanding that the
victim give Benson all of her jewelry and money, Benson
directed the victim to remove her clothing, threatening to
kill her if she did not. Trial Tr. at PP. 553–56. She was then
instructed to go into another room, where she was raped
and anally sodomized by Brown. Trial Tr. at PP. 556–58.
The victim then performed oral sex on Brown. Trial Tr.
at P. 559.

At some point following the forced sexual acts, Brown
told the victim she could leave, after which she grabbed
her clothes and ran out of the apartment. Trial Tr. at PP.
560–61. She eventually hailed a taxicab and was driven
to the Albany Medical Center Hospital where she was
examined. Trial Tr. at PP. 560–62. That examination
revealed an abrasion and contusion on her forehead as
well as abrasions on her forearms and wrists. Trial Tr. at
P. 416.

II. *Procedural History*

A. *State Court Proceedings*

**\*2** Brown and a co-defendant were both indicted by an Albany County grand jury on May 7, 1991, and charged with rape in the first degree, sodomy in the first degree, and robbery in the second degree. *See* Appendix in Support of Appeal at PP. A1–4. The two were tried jointly before separate juries in Albany County Supreme Court, beginning on July 6, 1992, with County Court Judge Thomas W. Keegan, presiding.

At the conclusion of the trial, Brown was found guilty on all counts. Trial Tr. at PP. 1235–37. Judge Keegan sentenced Brown as a predicate violent felony offender to terms of imprisonment of twelve and one-half to twenty-five years on the rape conviction, twelve and one-half to twenty-five years on the oral sodomy conviction (to run consecutively with the sentence for the rape conviction), twelve and one-half to twenty-five years on the anal sodomy conviction (to run concurrent to the sentence imposed for the rape and oral sodomy convictions), and seven and one-half to fifteen years on the robbery conviction (consecutive to the other sentences imposed). As a result, Brown was sentenced to an aggregate of between thirty-two and one-half to sixty-five years imprisonment. *See* Sentencing Tr. (3/29/93) at PP. 16–17.

Brown appealed his conviction to the New York State Supreme Court, Appellate Division, Third Department, however, that court affirmed the convictions and sentences in all respects. *People v. Brown,* 232 A.D.2d 750 (3rd Dept.1996). Leave to appeal from that determination to the New York State Court of Appeals was denied on January 15, 1997. *People v. Brown,* 89 N.Y.2d 940 (1997).

On April 3, 1997, Brown filed a *pro se* motion to vacate the conviction pursuant to New York's Criminal Procedure Law ("CPL") § 440.10, claiming that the prosecution failed to disclose to him a statement given by his wife to Detective Michael Sbuttoni of the Albany Police Department, as well as a statement made by Angella McCall, before the grand jury that indicted Brown. He also claimed that the victim was improperly permitted to make an in-court identification of Brown as the perpetrator. *See* CPL § 440.10 motion. County Court Judge Thomas A. Breslin denied that application in his order dated July 28, 1997. The Third Department denied Brown's request to appeal Judge Breslin's decision by Order dated October 6, 1997, *People v. Brown,* No. 10150 (3rd Dept., Oct. 6, 1997), and the Court of Appeals

dismissed Brown's application for leave to appeal. *People v. Brown,* S910875, slip op. at P.1 (Nov. 7, 1997).

Brown also filed a collateral challenge to his conviction with the Third Department on August 12, 1997, in the form of an application for a writ of error *coram nobis* alleging ineffective assistance of appellate counsel. That application was denied by the Third Department on October 3, 1997, *see People v. Brown,* No. 10165 (3rd Dept., Oct. 3, 1997), and the Court of Appeals dismissed Brown's application for leave to appeal. *People v. Brown,* 91 N.Y.2d 833 (1997).

**\*3** Brown's final state-court challenge to his conviction was a motion to set aside his sentence pursuant to § 440.20 which he filed on September 1, 1998. The County Court denied that application on July 20, 1999, and Brown was denied permission to appeal that order to the Third Department in its order dated October 14, 1999. [3] *See People v. Brown,* No. 11474 (3rd Dept., Oct. 14, 1999).

B. *This Proceeding*

Brown commenced this proceeding on February 1, 2000 (Pet.(*Dkt. No. 1* ) at P.7). [4] U.S. District Judge David N. Hurd issued an order pursuant to the rules governing § 2254 cases in the United States District Courts, 28 U.S.C. foll. § 2254, which, *inter alia,* directed the respondent to respond to the petition (*Dkt. No. 4* ), and on June 23, 2000, the Office of the Attorney General for the State of New York, acting on respondent's behalf, filed an answer and memorandum of law, requesting dismissal of the petition. *Dkt. Nos. 8–9.* [5]

III. *Discussion*

Enactment by Congress of the AEDPA brought about significant changes to the prisoner litigation landscape. One of those was the institution of a one-year statute of limitations for habeas corpus petitions filed after April 24, 1996. Specifically, in light of the AEDPA, 28 U.S.C. § 2244 now provides that:

(1) A 1–year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

As noted above, the Court of Appeals denied Brown leave to appeal on January 15, 1997. Thus, his conviction became "final" on April 15, 1997, "when his time to seek direct review in the United States Supreme Court by writ of certiorari expire[d]." *Williams v. Artuz,* 237 F.3d 147, 150 (2d Cir.2001); (quoting *Ross v. Artuz,* 150 F.3d 97, 98 (2d Cir.1998)); *Hernandez v. Artuz,* No. 99CIV.4522, 2002 WL 236678, at *3 (S.D.N.Y. Feb. 14, 2002) (quoting *Williams* ); *see also,* 28 U.S.C. § 2244(d)(1)(A). Although the AEDPA's statute of limitations would typically have begun to run on that date, Brown filed his first state court challenge to his conviction, his § 440.10 motion, on April 3, 1997. That filing tolled the applicable statute of limitations until October 6, 1997, when the Third Department denied Brown permission to appeal the denial of his § 440 motion. *See* 28 U.S.C. § 2244(d)(2); *e.g. Gomez v. Duncan,* No. 02CV0846, 2002 WL 1424584, at *3 (S.D.N.Y. July 1, 2002) ("an application is pending [for AEDPA tolling purposes] as long as the ordinary state collateral review process is 'in continuance'—i.e., 'until the completion of that process'") (quoting *Carey v. Saffold,* 536 U.S. 214, 219–20 (2002)).

**\*4** Thus, the statute of limitations applicable to Brown's federal habeas petition first began to run on October 6, 1997, when the Third Department denied Brown permission to appeal. Although Brown sought permission to appeal the Third Department's ruling to the Court of Appeals, that application was not "properly filed" under the AEDPA because that order of the Third Department was not appealable to the Court of Appeals under CPL § 450.90(1). *See Tineo v. Strack,* No. CV–98–834, 1998 WL 938950, at *3 n. 2 (E.D.N.Y. Nov. 12, 1998) (citations omitted); *see also, Brown,* S910875, slip op. at P.1 (citing § 450.90(1)). [6]

When Brown filed his § 440.20 motion on September 1, 1998, the AEDPA's statute of limitations was again tolled. However, by the time of that filing, 330 days of the AEDPA's statute of limitations had elapsed. The AEDPA's statute of limitations began running anew on October 14, 1999 (when the Appellate Division denied Brown leave to appeal the County Court's denial of his § 440.20 motion), [7] and continued to run until February 1, 2000 (or 110 days), the date on which Brown signed his federal habeas petition.

Thus, after excluding the time during which the statute of limitations was tolled, a total of 440 days passed between the date on which Brown's conviction became final and the filing of this proceeding. Therefore, Brown has exceeded the statute of limitations by 75 days. Accordingly, absent a basis for equitable tolling, his petition was untimely filed and must be dismissed on this basis. *E .g. Smith v. McGinnis,* 208 F.3d 13, 17–18 (2d Cir.2000); *Alamo v.. Ricks,* No. 01–CV–1381, 2002 WL 1732815, at *2 (E.D.N.Y. July 24, 2002); *Bryant v. Eisenschmidt,* 10 F.Supp.2d 211, 212–13 (N.D.N.Y.1998) (McAvoy, C.J.) (petition for writ of habeas corpus filed four hundred and seven days (407) after effective date of the AEDPA dismissed as untimely); *Nusbaum v. Shriver,* No. 97–CV–1029, 1998 WL 59478 (N.D.N.Y. Feb. 10, 1998) (Pooler, D.J.) (dismissing petition filed twenty-two (22) days after expiration of AEDPA's statute of limitations); *Palmeri v. Greiner,* 175 F.Supp.2d 461, 465 (E.D.N.Y.2001).

"Equitable tolling is a doctrine that permits courts to extend a statute of limitations on a case-by-case basis to prevent inequity." *Johnson v. Nyack Hosp.,* 86 F.3d 8, 12 (2d Cir.1996). "In the context of a late-filed habeas petition, equitable tolling may sometimes offer an avenue for avoiding Suspension Clause issues in the rare case where strict application of the one year limitations period would create an unreasonable burden." *Warren v.. Garvin,* 219 F.3d 111, 113 (2d Cir.) (internal quotation and citation omitted), *cert. denied,* 531 U.S. 968 (2000). However, equitable tolling is only available when " 'extraordinary circumstances' prevent a prisoner from filing a timely habeas petition." *Warren,* 219 F.3d at 113 (quoting *Smith,* 208 F.3d at 17); *Agramonte v. Walsh,* No. 00 CV 892, 2002 WL 1364086, at *1 (E.D.N.Y. June 20, 2002). "To merit application of equitable tolling, the petitioner must demonstrate that he acted with reasonable diligence during the period he wishes to have tolled, but that despite his efforts, extraordinary circumstances

beyond his control prevented successful filing during that time." *Smaldone v.. Senkowski,* 273 F.3d 133 (2d Cir.2001) (internal quotation and citation omitted); *cert. denied,* 535 U.S. 1017 (2002); *see also, Warren,* 219 F.3d at 113 (citing *Smith,* 208 F.3d at 17).

**\*5** The record establishes that Brown did not act with reasonable diligence between the time his conviction became final and the date on which he filed this action. Brown waited nearly one year after his § 440.10 and coram nobis applications had been denied before choosing to file his § 440.20 motion to set aside his sentence, and then waited several months after that application was denied before commencing this action. The court finds no basis to invoke equitable tolling in order to consider the substance of his untimely petition. Accordingly, this court recommends that this action be denied and dismissed as time-barred under the AEDPA.

WHEREFORE, it is hereby

ORDERED, that the clerk seal the file in this proceeding in order to comply with N.Y.'s Civil Rights Law § 50–b; and it is further

RECOMMENDED, that Brown's petition be DENIED and DISMISSED in its entirety; and it is further

ORDERED, that the clerk serve a copy of this Order on the parties by regular mail.

NOTICE: pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report-recommendation. Any objections shall be filed with the clerk of the court. FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(e), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993).

**All Citations**

Not Reported in F.Supp.2d, 2003 WL 21294476

---

Footnotes

1    Under New York law:

     [t]he identity of any victim of a sex offense ... shall be confidential. No ... court file or other documents, in the custody or possession of any public officer or employee, which identifies such a victim shall be made available for public inspection.

     New York's Civil Rights Law § 50–b. In light of this provision, this court will not refer to the victim by her name. Moreover, since both Brown and respondent have referred to the victim by name in their submissions, the court directs the clerk to seal the file in this proceeding.

2    Benson had indicated to the victim that the telephone in the apartment was not working. Trial Tr. at P. 551.

3    Although this court was not supplied with a copy of the County Court's decision denying Brown's § 440.20 motion, the respondent did provide a copy of the Appellate Division's decision denying leave to appeal. That decision indicated the date on which the County Court denied Brown's § 440.20 application.

4    Brown's petition was stamped by the clerk's office as having been filed on February 9, 2000 (Pet. at P. 1). The Second Circuit has held, however, that due to the unique difficulties faced by incarcerated *pro se* litigants, a prisoner's pleading is deemed to be properly filed at the time he or she hands the papers to the prison authorities for transmittal to the court. *Dory v. Ryan,* 999 F.2d 679, 681–82 (2d Cir), *modified on reh'g,* 25 F.3d 81 (2d Cir.1994); *Noble v. Kelly,* 246 F.3d 93, 97–98 (2d Cir.), *cert. denied,* 534 U.S. 886 (2001) (extending "prison mailbox rule" to petitions seeking writ of habeas corpus pursuant to 28 U.S.C. § 2254). Therefore, for purposes of this Report, the court finds that Brown commenced this proceeding on May 1, 2000.

5    Respondent also provided the court with the records associated with the relevant state court proceedings.

6    Brown filed his application for a writ of error coram nobis on August 12, 1997, when the applicable statute of limitations was already being tolled due to the § 440.10 motion Brown had filed. The Third Department denied the coram nobis application on October 3, 1997—three days before the statute of limitations began to run following the denial by the Third Department of Brown's request for leave to appeal the denial of his § 440.10 motion. Thus, the state-court proceedings relating to Brown's coram nobis application did not effect the governing statute of limitations. Furthermore, although Brown sought permission from the Court of Appeals to appeal the denial of his coram nobis application, that request was not a "properly filed" state court challenge that could toll the federal statute of limitations because "no application for

2003 WL 21294476

leave to appeal ... will lie from the order of the Appellate Division denying an application for a writ of error coram nobis."
*Hizbullahankhamon v.. Walker,* 255 F.3d 65, 70 (2d Cir.2001) (quoting *People v. Adams,* 82 N.Y.2d 773 (1993)).

7    "[N]o appeal lies to the New York Court of Appeals from 'an order of a single Justice of the Appellate Division denying leave to appeal to that Court pursuant to CPL 460.15." ' *Hutzenlaub v. Portuondo,* 232 F.Supp.2d 40, 43 (E.D.N.Y.2002) (quoting *People v. Williams,* 97 N.Y.2d 748 (2002) (other citation omitted).

---

**End of Document**                          © 2018 Thomson Reuters. No claim to original U.S. Government Works.

**H**

Only the Westlaw citation is currently available.
United States District Court,

E.D. New York.
Ernest WEST Petitioner
v.
HAMILL, Acting Superintendent, Livingston
Correctional Facility, Respondent.
No. 04-CV-2393 (CBA).

Aug. 1, 2005.
Bernard V. Kleinman, White Plains, NY, for Petitioner.

Ellen C. Abbot, Queens County District Atty's Office, Queens, NY, for Respondent.

*NOT FOR PUBLICATION MEMORANDUM & ORDER*

AMON, J.

**\*1** Petitioner Ernest West, represented by counsel, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons set forth below, the petition is dismissed as untimely.

*BACKGROUND*

On the morning of November 17, 1991, Charles Caruth, a car service driver who knew West from West's previous employment with Caruth's car service, picked up West and an accomplice and drove them to Queens. West then stole Caruth's car and $200 by threatening Caruth with what Caruth believed to be a gun. Two days later, West was arrested while driving Caruth's car, and Caruth subsequently identified him in a lineup.

West was convicted at jury trial of robbery in the first and second degrees, criminal possession of stolen property in the third degree, and the unauthorized use of a vehicle in the third degree. On February 25, 1993, he was sentenced to concurrent indeterminate prison terms of twelve and one-half to twenty-five years on the first-degree robbery count, three and one-half to seven years on the possession of stolen property count, and a term of one year for the unauthorized use of a vehicle count.

On February 14, 1995, the Appellate Division,

Second Department unanimously affirmed West's conviction. *People v. West,* 622 N.Y.S.2d 572, 212 A.D.2d 651 (2d Dept.1995). On March 31, 1995, the New York State Court of Appeals denied West's application for leave to appeal. *People v. West,* 85 N.Y.2d 916, 650 N.E.2d 1341, 627 N.Y.S.2d 339 (1995).

In or around December 1999,[FN1] West filed a motion for a writ of error *coram nobis,* which was denied by the Appellate Division on March 27, 2000. *People v. West,* 705 N.Y.S.2d 278, 270 A.D.2d 509. West then filed a motion to reargue his appeal on April 25, 2000 and a motion to reargue the denial of his motion for a writ of error *coram nobis* on July 18, 2000. In a decision dated August 25, 2000, West's motion to reargue his appeal was denied. On October 26, 2000, West's motion to reargue the denial of his motion for a writ of error *coram nobis* was also denied.

> FN1. Although there is some question as to the exact date of this motion, all parties concede that the motion was filed in or around December 1999.

West filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on June 1, 2004. West claims that he was (1) denied his Sixth Amendment right to be present during all phases of the trial, (2) denied the effective assistance of appellate counsel, and (3) denied his Fifth Amendment right not be compelled to testify against himself based on the People's cross examination of him. Respondent argues that West's motion should be denied as untimely.

*DISCUSSION*

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), there is a one-year statute of limitations for habeas corpus petitions filed after the date of the AEDPA's enactment, April 24, 1996. 28 U.S.C. § 2244(d)(1).[FN2] However, prisoners whose conviction became final prior to the effective date of the AEDPA are accorded a period of one year after the effective date of AEDPA in which to file a first § 2254 petition. *Ross v. Artuz,* 150 F.3d 97, 103 (2d Cir.1998). AEDPA also provides for tolling of the one-year statute of limitations under certain circumstances. In particular, the "time during which a properly filed application for State

Not Reported in F.Supp.2d, 2005 WL 1861735 (E.D.N.Y.)

(Cite as: 2005 WL 1861735 (E.D.N.Y.))

post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2). Furthermore, equitable tolling may apply if a petitioner is able to show that "extraordinary circumstances prevented [him] from filing his petition on time," and that "[petitioner] acted with reasonable diligence throughout the period he seeks to toll. Smith v. McGinnis, 208 F.3d 13, 17 (2000), cert. denied, 531 U.S. 840, 121 S.Ct. 104, 148 L.Ed.2d 63 (2000).

> FN2. The statute provides that the limitations period shall run from the latest of the following:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing such State action;

> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

> (D) the date on which the factual predicate of the claim presented could have been discovered through the exercise of due diligence.

> 28 U.S.C. § 2244(d)(1).

*2 A defendant's conviction becomes final when "a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied." Griffith v. Kentucky, 479 U.S. 314, 321 n. 6, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987); see also 28 U.S.C. § 2244(d)(1)(A). In this case, the Appellate Division unanimously affirmed West's conviction, and the New

York Court of Appeals denied leave to appeal on March 31, 1995. People v. West, 85 N.Y.2d 916, 650 N.E.2d 1341, 627 N.Y.S.2d 339 (1995). West's conviction became final ninety days thereafter, after the expiration of the period in which he could have petitioned for a writ of certiorari from the United States Supreme Court. Fernandez v. Artuz, 402 F.3d 111, 112 (2d Cir.2005). Since West's conviction became final well before AEDPA took effect on April 24, 1996, the one year grace period for filing habeas corpus petitions pursuant to § 2254 established in Ross v. Artuz applies in this case. The grace period expired on April 24, 1997. Ross, 150 F.3d at 103. West filed the current petition on June 1, 2004, over seven years too late. Although West filed post-conviction motions in state court, he did not do so until after the grace period expired on April 24, 1997, and therefore is not entitled to statutory tolling under § 2244(d)(2).[FN3] West is therefore barred from instituting this action at this time absent circumstances meriting equitable tolling.

> FN3. West does not argue that he is entitled to statutory tolling.

A petitioner seeking habeas relief bears the burden of establishing the propriety of equitable tolling. Boos v. Runyan, 201 F.3d 178, 185 (2d Cir.2000). Further, a "conclusory and vague claim, without a particularized description ... is manifestly insufficient to justify any further inquiry into tolling." Id. In this case, West's only proffered basis for seeking equitable tolling is that (1) he "has not been granted an impartial review of his legitimate claims ... of ineffective assistance of counsel, and his other claims raised in the initial appellate papers," (2) he "is unable to proceed without the assistance of counsel, and the actions of both the lower court and his counsel merit a tolling of the statute," and (3) "a manifest injustice will occur if the Court refuses to hear his petition." (Petitioner's Memorandum of Law at 7.) These conclusory assertions are insufficient to meet West's burden on this claim. West has not provided any factual basis to establish that he was subjected to extraordinary circumstances that prevented him from filing his petition on time, nor has he provided any evidence to indicate that he acted with reasonable diligence during the period of time that he seeks to toll. West's assertion that he is unable to proceed without legal counsel is unavailing, as lack of legal

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 1861735 (E.D.N.Y.)

(Cite as: 2005 WL 1861735 (E.D.N.Y.))

representation does not merit equitable tolling. *See* *McGinnis,* 208 F.3d at 18 (petitioner's *pro se* status throughout most of the period of limitations does not merit equitable tolling); *see also Turner v. Johnson,* 177 F.3d 390, 392 (5th Cir.1999), *cert. denied,* 528 U.S. 1007, 120 S.Ct. 504, 145 L.Ed.2d 389 (1999) ("[N]either a plaintiff's unfamiliarity with the legal process nor his lack of representation during the applicable filing period merits equitable tolling"). As West has failed to state any basis upon which the period of limitations may be equitably tolled, this petition is untimely and must be dismissed.

*CONCLUSION*

**\*3** For the reasons set forth above, West's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied as untimely. A certificate of appealability will not issue, as West has not made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2). The Clerk of the Court is directed to enter judgment in accordance with this Order and to close the case.

SO ORDERED.

E.D.N.Y.,2005.

West v. Hamill
Not Reported in F.Supp.2d, 2005 WL 1861735 (E.D.N.Y.)
END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.